IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 9, 2020 Session

## STATE OF TENNESSEE v. FREDERICK JOHN SCHMITZ, JR.

**Appeal from the Circuit Court for Hickman County**
**No. 17-5244CR     Joseph A. Woodruff, Judge**

_____

**No. M2019-01254-CCA-R3-CD**

_____

A Hickman County jury convicted the Defendant, Frederick John Schmitz, Jr., of evading arrest while operating a motor vehicle, reckless driving, and speeding. The trial court sentenced him to an effective eighteen-month sentence, suspended to supervised probation. On appeal, the Defendant contends that the evidence at trial was insufficient to support his convictions for evading arrest and reckless driving. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Olin J. Baker and F. Lee Spratt, Charlotte, Tennessee, for the appellant, Frederick John Schmitz, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; T. Austin Watkins, Assistant Attorney General; Kim R. Helper, District Attorney General; and Hunter G. Knight, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's arrest for multiple offenses occurring during a police pursuit on May 26, 2017. A Hickman County grand jury indicted the Defendant for evading arrest while operating a motor vehicle, reckless driving, driving with a suspended license, and speeding.

At the Defendant's trial on these charges, the parties presented the following evidence: Deputy James Lindsey of the Hickman County Sheriff's Department was conducting a "business check" on Highway 100 at the Beacon Light Tea Room ("the Beacon Light") sometime between 11:00 p.m. and midnight when he heard a motorcycle approaching him that "sounded like it was winding higher and higher and never seemed to pla[ne] out." Deputy Lindsey noticed that the motorcycle, which he later determined was being driven by the Defendant, appeared to be speeding as it topped the hill near the Beacon Light. Deputy Lindsey's radar unit verified that the Defendant was traveling seventy-one miles per hour, which was sixteen miles over the posted speed limit of fifty-five miles per hour. Deputy Lindsey pressed the lock button on his radar unit to lock in the Defendant's speed, but he noted that it sounded as though the Defendant sped up as he passed the deputy's vehicle.

Deputy Lindsey pulled out of the Beacon Light parking lot and activated his blue lights and sirens. It took him approximately two minutes driving at speeds up to one-hundred miles per hour to catch up with the Defendant. Deputy Lindsey admitted that he temporarily lost sight of the Defendant's motorcycle but he could still hear it. The motorcycle Deputy Lindsey pulled up behind looked like the same one that had passed him at the Beacon Light, he saw no other motorcycles on the road, and he only met one other car on Highway 100. The Defendant turned onto a back road and slowed down to thirty miles per hour. Deputy Lindsey testified that the Defendant had his hand down beside the motorcycle and "kept waving at me like he was acknowledging me but was not pulling over." At that point, he thought that the Defendant may have been looking for a place to stop. Deputy Lindsey got close enough to the motorcycle to obtain the license plate number which he relayed to dispatch. Dispatch relayed to him that the motorcycle was registered to the Defendant. Deputy Lindsey then backed away from the motorcycle to prevent an accident from occurring.

Deputy Lindsey followed the Defendant for several miles, and the Defendant suddenly sped up to seventy miles per hour as he approached a hill. The Defendant turned into a driveway and parked behind some trees. Deputy Lindsey pulled into the driveway, got out of the car, and turned his body camera on. He estimated that he had followed the Defendant for fifteen to twenty minutes before the Defendant turned into the driveway. Deputy Lindsey explained that his patrol car did not have a camera system inside the car and that he did not turn his body camera on inside the vehicle because it would not have been positioned high enough in the vehicle to record the pursuit.

The Defendant began walking away from the motorcycle, toward the house, and Deputy Lindsey instructed him to stop. The Defendant did not appear to be armed, but Deputy Lindsey drew his taser in the event that the Defendant resisted arrest. The Defendant began yelling at Deputy Lindsey, and Deputy Lindsey instructed the Defendant to show his hands. The Defendant finally raised his hands, and Deputy Lindsey instructed him to walk back to the patrol car. The Defendant refused, and

Deputy Lindsey walked toward the Defendant and handcuffed him. The Defendant also refused to give Deputy Lindsey his name; however, Deputy Lindsey obtained his name through other means. The Defendant told Deputy Lindsey that he had been in a fight at a bar, and he thought that the individuals from the bar were chasing him. Deputy Lindsey then asked, "With blue lights and audibles on?" The Defendant replied, "Could be." The Defendant told Deputy Lindsey that he had a "knot" on the back of his head, which Deputy Lindsey verified, and the Defendant also had a mark on his nose. The video from Deputy Lindsey's body camera reflects that the Defendant told Deputy Lindsey that he did not see the blue lights.

On cross-examination, Deputy Lindsey agreed that he could not determine a vehicle's speed based on sound alone. He said that he did not see the motorcycle until it came over a hill approximately a quarter of a mile from where he was parked. Deputy Lindsey testified that while he was in pursuit of the Defendant, there were stretches of road that had trees on both sides, and his emergency lights were "lighting up the trees" around them. His blue lights were still on when he caught up with Defendant, who turned right. While he could not be sure, Deputy Lindsey opined that the Defendant should have seen the lights reflecting off the motorcycle's mirrors. Concerning the Defendant's injuries and allegation that he had been in a bar fight, the following exchange took place:

| [Defense Counsel]: | And you would agree that if you've just been assaulted that you have a right to flee from that assault, correct? You don't have to just stand there and get beat. |
| [Deputy Lindsey]: | I don't recommend anybody staying. |
| [Defense Counsel]: | Okay. So him fleeing that area is perfectly reasonable? |
| [Deputy Lindsey]: | But fleeing blue lights is not. |

Deputy Lindsey testified that there were few houses and no businesses in the area where Defendant could have stopped if he felt unsafe. However, he said: "If [the Defendant] would have stayed at 30 [m.p.h.], then it would not have been unreasonable. He sped up at the last moment to 70 plus, and that was unreasonable." Deputy Lindsey asserted that he would not have pursued the Defendant at speeds of up to one-hundred miles per hour if there had been heavy traffic in the area.

Based upon the evidence presented at trial, the jury convicted the Defendant of evading arrest while operating a motor vehicle, reckless driving, and speeding. The State dismissed the suspended-license count. The trial court imposed an effective sentence of eighteen months, suspended to supervised probation. It is from these judgments that the Defendant now appeals.

# I.     Analysis

On appeal, the Defendant asserts that the evidence was insufficient to support his conviction for evading arrest because the proof did not show that he intentionally fled from a law enforcement officer, and there was no proof that he "actually received the notice to stop . . . and, therefore, that he could not, and did not, intentionally flee." He further argues that the evidence was insufficient to support his conviction for reckless driving because the State failed to establish whether he exhibited willful or wanton disregard for the safety of persons or property. The Defendant does not contest his conviction for speeding. The State counters that the jury could infer from the circumstances that the Defendant was aware of Deputy Lindsey's presence and intentionally sped up in order to elude him and that the Defendant's excessive speed showed a willful and wonton disregard for his own safety. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of

the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

## A. Evading Arrest

The Defendant was convicted of Class E felony evading arrest. A person evades arrest who, "while operating a motor vehicle on any street, road, alley[,] or highway in this state, . . . intentionally flee[s] or attempt[s] to elude any law enforcement officer, after having received any signal from officer to bring the vehicle to a stop." T.C.A § 39-16-603(b)(2017). The Defendant asserts on appeal that the evidence was insufficient to show that he actually received any signal from Deputy Lindsey to bring his motorcycle to a stop; therefore, he could not and did not intentionally flee.

The evidence, viewed in the light most favorable to the State, proved that Deputy Lindsey, with his radar unit, clocked the Defendant traveling seventy-one miles per hour in a fifty-five miles per hour zone on a motorcycle. Deputy Lindsey pulled out of the Beacon Light parking lot onto Highway 100 and activated his blue lights and sirens in pursuit of the Defendant. After Deputy Lindsey caught up to the motorcycle, the Defendant turned onto a back road and slowed down to thirty miles per hour. The Defendant had his hand down beside the motorcycle and waved like he was acknowledging Deputy Lindsey, but he did not pull over. At one point, Deputy Lindsey got close enough to the motorcycle to obtain the license plate number. Deputy Lindsey followed the Defendant for fifteen to twenty minutes until the Defendant suddenly sped up to seventy miles per hour or more as he crested a hill and then turned into a driveway and parked. The Defendant began walking toward the house and yelled at Deputy

Lindsey when he instructed the Defendant to stop. The Defendant finally raised his hands after so instructed, but he refused to walk back to the patrol car or to give his name. Deputy Lindsey opined that the Defendant should have seen his lights because: his blue lights were still on when he caught up to the Defendant before he turned, and because during the pursuit, his emergency lights were "lighting up the trees" around them.

This is sufficient evidence from which a rational jury could infer that the Defendant received notice from Deputy Lindsey to stop and that he intentionally fled. It is well-established that intent may be inferred from the character and "nature of the act [or] from all the circumstances of the case in evidence." *State v. Finch*, 465 S.W.3d 584, 599 (Tenn. Crim. App. 2013) (quoting *State v. Inlow*, 52 S.W.3d 101, 105 (Tenn. Crim. App. 2000)) (alteration in original). The jury, as was its prerogative, rejected the Defendant's claim to Deputy Lindsey that he thought someone involved in the bar fight was chasing him and that he did not see the blue lights. *Bland*, 958 S.W.2d at 659. The evidence is sufficient beyond a reasonable doubt to support the Defendant's conviction for evading arrest. The Defendant is not entitled to relief on this issue.

## B. Reckless Driving

The jury also convicted the Defendant of reckless driving. "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving." T.C.A. § 55-10-205(a)(2013). The Defendant argues that the State failed to establish that he exhibited willful or wanton disregard for the safety of persons or property.

Excessive speed under certain facts and circumstances, can be sufficient to sustain a conviction for reckless driving. *State v. Wilkins*, 654 S.W.2d 678, 680 (Tenn. 1983). In *Wilkins*, the defendant's speed of one-hundred twenty miles per hour on a highway with hills and curves was sufficient to sustain a reckless driving conviction. *Id.* In that case, our supreme court held:

> Willful and wanton disregard for another's safety is a factual question properly determined from all the circumstances. It exceeds negligence in that the actor willfully breaches a duty. While 20 miles per hour without more is not "willful and wanton," we do not think such can be said for all speeds. Indeed, we think it is within the discretion of the finder of fact to consider that a motor vehicle's speed can be so fast as to constitute willful and wanton disregard for persons or property, be it the person and property of the driver or others on the road or in the area.

*Id.*

The evidence, viewed in the light most favorable to the State, proved that Deputy Lindsey heard a motorcycle approaching him that sounded like it was accelerating. After Deputy Lindsey's radar unit verified that the motorcycle driven by the Defendant was traveling seventy-one miles per hour, which was sixteen miles over the posted speed limit of fifty-five miles per hour, he noted that it seemed to continue to accelerate. After Deputy Lindsey pulled out of the restaurant's parking lot and activated his blue lights and sirens, it took him approximately two minutes driving at speeds up to one-hundred miles per hour to catch up with the Defendant. Deputy Lindsey testified that the Defendant slowed down for some period of time but then, while still on the back road, suddenly accelerated to seventy miles per hour or more, following which the Defendant crested a hill and then turned into a driveway.

The jury, as the finder of fact, heard the proof in this case and determined that the Defendant's driving constituted a "willful or wanton disregard" for his own safety or property. T.C.A. §55-10-205(a). We will not substitute our judgment for that of the jury. *Wilkins*, 654 S.W.2d at 680; *State v. Sean Higgins*, No. W2010-00779-CCA-R3-CD, 2012 WL 1494640, at *4 (Tenn. Crim. App., at Jackson, April 30, 2012) (a defendant's speed of eighty-one miles per hour in a sixty-five mile per hour zone and intoxication was sufficient to sustain a reckless driving conviction), *perm. app. denied* (Tenn. Sept. 18, 2012). The evidence is sufficient beyond a reasonable doubt to support the Defendant's reckless driving conviction. The Defendant is not entitled to relief on this issue.

## II. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE